Argued and submitted January 20, 2016, affirmed April 26, 2017

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**JASON RAY DIZICK,**
*Defendant-Appellant.*

Coos County Circuit Court
93CR0153; A156745

395 P3d 945

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## SERCOMBE, P. J.

Defendant appeals an amended judgment of conviction for two counts of attempted aggravated murder, ORS 163.095 and ORS 161.405, two counts of first-degree robbery with a firearm, ORS 164.415, and two counts of first-degree assault, ORS 163.185. That amended judgment was entered by the trial court more than 20 years after defendant was first convicted of those crimes, pursuant to the state's motion to amend the judgment under ORS 138.083(1)(a).[1] The state moved to amend the judgment to include the grid block scores and presumptive sentences for the two counts of attempted aggravated murder (Counts 5 and 6) that the trial court had previously announced on the record (11-D and 177 months on Count 5, and 11-I and 121 months on Count 6, respectively) but omitted from the written judgment. Defendant responded that the court should instead calculate grid block scores of 10-I on each of the attempted aggravated murder counts, because the grid block scores it had announced on the record were legally incorrect. The court granted the state's motion, rejected defendant's arguments, and entered an amended judgment that added the omitted terms but did not correct the calculation of the presumptive sentences. On review for abuse of discretion, *State v. Larrance,* 270 Or App 431, 433, 347 P3d 830 (2015), we affirm.

Defendant pleaded guilty and was convicted of the attempted aggravated murder, first-degree robbery, and first-degree assault crimes in 1993. The trial court found defendant to be a "dangerous offender" and imposed consecutive 30-year prison terms on the two counts of attempted aggravated murder. At the time of the sentencing, ORS 144.232(1) (1991), *amended by* Oregon Laws 1993, chapter 334, section 4, provided that a dangerous offender is eligible for release "after having served the presumptive sentence established under ORS 161.737." ORS 161.737 (1991),

---

[1] ORS 138.083(1)(a) provides:

"The sentencing court retains authority irrespective of any notice of appeal after entry of judgment of conviction to modify its judgment and sentence to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment. The court may correct the judgment either on the motion of one of the parties or on the court's own motion after written notice to all the parties."

*amended by* Oregon Laws 1993, chapter 334, section 6, provided that a dangerous offender sentence "shall constitute a departure from the sentencing guidelines" and, when that sentence is imposed, "the sentencing judge shall indicate on the record the reasons for the departure and the presumptive sentence that would have been imposed" if the court had not departed.

On defendant's appeal from the resulting judgment, we concluded that the trial court had erred in imposing that sentence and remanded for resentencing. *State v. Dizick*, 137 Or App 486, 491, 905 P2d 250 (1995), *rev den*, 322 Or 490 (1996). We explained that the court did not, but was required to, "determine the crime seriousness classification for defendant's crimes, calculate the presumptive sentence [and] make the appropriate record as required by" the sentencing-guidelines rules. *Id.*

In 1996, on remand from that decision, the trial court resentenced defendant. As relevant to this appeal, the court concluded that defendant's attempted aggravated murder convictions should be ranked as 11 on the crime seriousness scale, and that defendant's criminal history should be scored "D" on Count 5 and "I" on Count 6. The court further concluded that the presumptive sentences for those counts were 177 and 121 months, respectively, and it imposed dangerous offender sentences of 354 months on Count 5 and 242 months on Count 6. The trial court then entered an amended judgment, which included the 354- and 242-month dangerous offender sentences, but failed to include defendant's grid block scores or the presumptive sentences.

Defendant appealed that judgment, asserting that the state had erred with respect to a "gun minimum" term imposed on one of defendant's convictions for first-degree robbery with a firearm. The state agreed with defendant, and the parties filed a joint motion to remand the case to the trial court; defendant then voluntarily dismissed his appeal. Another amended judgment was entered correcting the gun minimum provision.

Subsequently, defendant filed a petition for post-conviction relief in which he argued that his dangerous offender sentences were unlawful under the United States

Supreme Court's decision in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). The post-conviction court denied his petition, this court affirmed, and the Supreme Court denied review. *Dizick v. Lampert*, 185 Or App 109, 57 P3d 952 (2002), *rev den*, 335 Or 266 (2003).

Then, in 2008, defendant requested a parole-consideration hearing on his sentences in this case. The Board of Parole and Post-Prison Supervision denied defendant's petition. The board concluded that defendant's "presumptive term [was] the same as the full sentence on both counts of aggravated murder," because that was what was reflected on the face of the judgment—and the Department of Corrections "face sheet" stating those terms—and it lacked authority to calculate a presumptive sentence different from the sentence provided by the trial court on the face of the judgment. *Dizick v. Board of Parole*, 260 Or App 229, 233, 317 P3d 911 (2013). The board then set a parole consideration date of February 11, 2038, and a parole consideration hearing for November 2037, based on the full 354- and 242-month dangerous offender terms. *Id.*

Petitioner sought judicial review in this court, and we reversed and remanded, concluding that the board had erred, as a matter of law, in setting that parole consideration date. First, we noted that the 1996 judgment was inadequate because it failed to include presumptive sentences for the attempted aggravated murder convictions. *Id.* at 236. We explained that the board correctly concluded that it lacked authority to make a determination of the presumptive term of incarceration for petitioner. However, we also explained that the board had, despite that conclusion, improperly proceeded to set a presumptive term for petitioner by setting his parole consideration date based on a judgment that did not include presumptive sentences. *Id.* at 236-37. We therefore remanded to the board "for further consideration, [and] for it to determine its proper course of action in resolving this problem." *Id.* at 238. In a footnote, we suggested that the board could remedy the inadequate judgment by "work[ing] with the Department of Corrections and the District Attorney of the county in which petitioner was convicted to obtain corrections to the judgment pursuant to ORS 138.083." *Id.* at 236 n 6.

Following the court's suggestion, the state filed a motion under ORS 138.083(1)(a) to correct the judgment by adding the grid block scores and presumptive sentences that the trial court had announced on the record at the 1996 resentencing hearing but failed to include in the judgment. Defendant responded, in a written memorandum and at a hearing on the state's motion, that the trial court should reconsider those sentences because they were erroneous. First, defendant argued that the court had erred in setting the crime seriousness score for his attempted aggravated murder convictions at 11, rather than 10. Prior to defendant's resentencing hearing, the legislature had established a crime seriousness score of 10 for attempted aggravated murder. Defendant argued that, although the legislature's action did not bind the court, it should still have followed the legislature's determination on that issue. Next, defendant contended that the court had erred in raising defendant's criminal history score to "D" on Count 5, because it had incorrectly concluded that defendant's offenses were part of separate criminal episodes.

The trial court declined to revisit the substance of defendant's sentences, explaining that defendant could have raised those issues on direct appeal from the judgment entered after the 1996 resentencing hearing or in defendant's petition for post-conviction relief:

"Assuming that the Motion to Correct this, filed by the State, allows the Defendant to raise his issues about this[,] and I'm not too sure that it does, but this is a Motion to Correct the record to, in fact, reflect what was done at the time. And what was done at the time, clearly the Court found this should be ranked as an 11. * * *

"* * * The Court then entered the Findings as to that. Had the presumptive sentence, and entered that Judgment.

"Those Judgments could have been appealed, [o]ne. It could have been Post-Conviction, another one. This case merely came back to the Court because the Court of Appeals suggested that a way to get this done was to file a Motion to Correct the record. And set it forth.

"So, I'm not going to change what was done in 1996."

The court therefore granted the state's motion and entered a "[j]udgment the same as it has been, with the exception of adding \*\*\* the presumptive sentence[s], and the crime-seriousness ranking[s]." Consequently, the trial court entered an amended judgment, which included the grid block scores and presumptive sentences for defendant's attempted aggravated murder convictions.

On appeal, defendant argues that the trial court abused its discretion in amending the judgment to reflect its oral rulings at the 1996 hearing, because those rulings were legally incorrect. In response, the state contends, among other things, that the trial court did not abuse its discretion by amending the judgment to accurately reflect the trial court's oral rulings at the 1996 resentencing hearing and declining to revisit those determinations. We agree with the state.[2]

A trial court's decision whether to modify an erroneous term of a judgment under ORS 138.083(1)(a) is "highly discretionary." *State v. Harding*, 225 Or App 386, 202 P3d 181, *vac'd on other grounds*, 347 Or 368, 223 P3d 1029 (2009). On review for abuse of discretion, we will reverse the trial court's decision only if it was "not a legally permissible one," *i.e.*, a decision outside the "range of legally correct discretionary choices" available to the court. *State v. Lewallen*, 262 Or App 51, 56, 58, 324 P3d 530, *rev den*, 355 Or 880 (2014) (internal quotation marks omitted). Furthermore, so long as the trial court articulates a permissible reason for declining to do so, ORS 138.083(1)(a) does not require a trial court to correct an erroneous term in a judgment, and there are "numerous reasons why a trial court, in its discretion, might \*\*\* choose *not* to grant a defendant's motion to correct" an "erroneous term." *Harding*, 225 Or App at 391 (emphasis in original; internal quotation marks omitted).

Our decision in *Lewallen* is illustrative. There, we assumed without deciding that the departure sentence in the judgment was erroneous, but we nevertheless concluded that "the trial court did not abuse its discretion in denying

---

[2] Our conclusion obviates the need to address the state's "law of the case" argument and its argument that our past decisions construing and applying ORS 138.083 should be disavowed.

defendant's request to modify" that sentence. 262 Or App at 56-57. We explained that, "[i]n view of the highly discretionary nature of the court's error modification authority pursuant to ORS 138.083," the trial court had reached a legally permissible result in denying that relief where it "held a hearing, listened to argument from both sides, engaged the parties on the issue in question, and expressed appropriate concerns about finality, the age of the case, the difficulty in empanelling a new jury, and the strength of the record on the departure findings." *Id.* at 58.

In contrast, the trial court in *Larrance* announced that, in determining whether to modify the terms of the defendant's judgment, it would "comply with the sentencing rules and statutes." 270 Or App at 439. The court, however, "misapprehended the law and ultimately decided the matter in reliance on that erroneous view of the law[.]" *Id.* at 440. On appeal, we concluded that the court had abused its discretion in failing to correct the erroneous terms of the judgment after stating its intent to modify the judgment to do so. *Id.* In contrast to *Lewallen*, the court did not articulate any reasons for declining to reexamine its past sentencing determination, but, instead, it sought only to ensure that the judgment complied with all applicable sentencing rules and statutes. *Cf. State v. Harding*, 222 Or App 415, 421, 193 P3d 1055 (2008), *adh'd to on recons*, 225 Or App 386, 202 P3d 181, *vac'd on other grounds*, 347 Or 368, 223 P3d 1029 (2009) (explaining that a trial court may, within its discretion, decline to correct an erroneous term in a judgment where other "factors and circumstances" support its decision not to do so).

Here, we assume both that defendant's arguments were properly before the trial court,[3] and that the trial court erroneously calculated defendant's grid block scores at the 1996 hearing. However, we conclude that the trial court did not abuse its discretion in declining to revisit its oral rulings

---

[3] As noted, the state moved to amend the judgment to reflect the trial court's oral rulings. Defendant raised his arguments in response to that motion and did not file his own motion to amend the judgment. The trial court assumed, without deciding, that "the Motion to Correct this, filed by the State, allows the Defendant to raise his issues * * *." We make the same assumption.

at the 1996 resentencing hearing and in amending the judgment to accurately reflect those rulings.

To begin, we have previously concluded that a trial court has the authority under ORS 138.083(1)(a) to amend a judgment to reflect a sentence that the court orally imposed but omitted from the judgment. *See State v. Estey*, 247 Or App 25, 29, 268 P3d 772 (2011), *rev den*, 352 Or 25 (2012) (trial court had authority under ORS 138.083(1)(a) to modify judgment to impose sentences consecutively, which it had orally imposed at the sentencing hearing, but omitted from the judgment); *State v. Gilbert*, 248 Or App 657, 662, 274 P3d 223 (2012) (explaining that "a difference in the sentencing court's oral ruling and the judgment is a 'factual error' that constitutes an 'erroneous term'" that a court may correct under ORS 138.083(1)(a)). Additionally, like the court in *Lewallen*, the trial court in this case held a hearing and heard argument from both parties before declining to modify the judgment as defendant requested. Furthermore, the court offered appropriate reasons for denying defendant's proposed modifications, explaining that defendant could have challenged the grid block scores on direct appeal in 1996 or in a petition for post-conviction relief in 2000. *See Lewallen*, 262 Or App at 58 (no abuse of discretion where the trial court's decision relied, in part, on "appropriate concerns about finality" and "the age of the case" in rejecting defendant's modification under ORS 138.083(1)(a)). Therefore, even to the extent that the trial court's determinations at the 1996 hearing were erroneous, under the circumstances, the trial court did not abuse its discretion. The court's decision to conform the judgment to those determinations, without revisiting them, was within the range of legally permissible discretionary choices. Accordingly, the trial court did not err.

Affirmed.